**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| BASCOM RESEARCH, LLC, | ) | Civil Action No. 1:12-cv-01111 |
| Plaintiff | ) | (LMB/JFA) |
| | ) | |
| v. | ) | |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**AND RELATED CASES:**

| | | |
|---|---|---|
| | ) | Civil Action No. 1:12-cv-1112 |
| | ) | (LMB/JFA) |
| BASCOM RESEARCH, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LINKEDIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| BASCOM RESEARCH, LLC, | ) | Civil Action No. 1:12-cv-1113 |
| | ) | (LMB/JFA) |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOVELL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| BASCOM RESEARCH, LLC, | ) | Civil Action No. 1:12-cv-1114 |
| | ) | (LMB/JFA) |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| _____ | ) | |

JIVE SOFTWARE, INC.,                    )
                                        )
            Defendant.                  )
                                        )
_____ )

BASCOM RESEARCH, LLC,                   )
                                        )     Civil Action No. 1:12-cv-1115
            Plaintiff                   )     (LMB/JFA)
                                        )
        v.                              )
                                        )
BROADVISION, INC.,                      )
                                        )
            Defendant.                  )
                                        )
_____ )

## DEFENDANTS' JOINT MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

**Table of Contents**

**Page**

I.    SUMMARY OF ARGUMENT .......................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................... 2

      A.    Defendants Have No Relevant Connection to this District ................................. 3

      B.    The Plaintiff Lacks a Significant Connection to this District ............................. 5

      C.    All Known Potential Non-Party Witnesses Reside Outside of Virginia............... 6

III.  ARGUMENT ................................................................................................... 7

      A.    Legal Standard .................................................................................... 7

      B.    This Action Could Originally Have Been Brought in the Northern District
            of California ......................................................................................... 7

      C.    The Convenience Factors and Interests of Justice Overwhelmingly Favor
            Transfer ................................................................................................ 8

            1.    Plaintiff's Choice of Forum Should Be Given Little Weight ................... 8

            2.    The Convenience of the Parties and Access to Sources of Proof
                  Strongly Favor Transfer.......................................................... 12

            3.    The Availability of Compulsory Process and the Convenience of
                  Non-Party Witnesses Also Favor Transfer ................................. 14

            4.    The Cost of Obtaining the Attendance of Witnesses Would Be
                  Much Higher if This Case Were Not Transferred .................................. 15

            5.    The Interests of Justice Would be Served by Transferring This
                  Action.................................................................................. 16

IV.   CONCLUSION .............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adiscov, LLC v. Autonomy Corp., PLC,*
  Civ. No. 2:11cv201-RBS (E.D. Va. June 9, 2011) ...........................................................11, 14

*Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.,*
  702 F. Supp. 1253 (E.D. Va. 1988) ............................................................................................8

*Civix-DDI, LLC v. Loopnet, Inc.,*
  No. 2:12cv2, 2012 WL 3776688 (E.D. Va. Aug. 30, 2012) ........................................10, 11, 17

*Heinz Kettler GMBH & Co. v. Razor USA, LLC,*
  750 F. Supp. 2d 660 (E.D. Va. 2010) ........................................................................................7

*Hunter Eng'g Co. v. ACCU Indus., Inc.,*
  245 F. Supp. 2d 761 (E.D. Va. 2002) ..................................................................................11, 14

*In re Genentech, Inc.,*
  566 F.3d 1338 (Fed. Cir. 2009)............................................................................................13, 14

*In re Microsoft Corp.,*
  630 F.3d 1361 (Fed. Cir. 2011)..............................................................................................8, 10

*In re T.S. Tech USA Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008)............................................................................................12, 16

*Jaffé v. LSI Corp.,*
  -- F. Supp. 2d ----, Civ. A. No. 3:12-cv-25, 2012 WL 2248044 (E.D. Va. June 15,
  2012) ......................................................................................................................................7, 13

*Lycos, Inc. v. Tivo, Inc.,*
  499 F. Supp. 2d 685 (E.D. Va. 2007) ......................................................................................12

*Original Creatine Patent Co. v. Met-Rx USA, Inc.,*
  387 F. Supp. 2d 564 (E.D. Va. 2005) ......................................................................................17

*Pragmatus AV, LLC v. Facebook, Inc.,*
  769 F. Supp. 2d 991 (E.D. Va. 2011) .............................................................................. *passim*

*Pragmatus AV, LLC v. Facebook, Inc.,* ("*Pragmatus II*"),
  Civ. Case No. 2:10-cv-560 (E.D. Va., Norfolk Div., Apr. 29, 2011) ..........................10, 11, 14

*Samsung Elecs. Co. v. Rambus, Inc.,*
  386 F. Supp. 2d 708 (E.D. Va. 2005) ......................................................................................12

**STATUTES**

28 U.S.C. § 1391 ................................................................................................................7, 8

28 U.S.C. § 1404(a) ...................................................................................................1, 2, 7, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................2

Pursuant to 28 U.S.C. § 1404(a), defendants Facebook, Inc. ("Facebook"), LinkedIn Corp. ("LinkedIn"), Jive Software, Inc. ("Jive"), BroadVision, Inc. ("BroadVision"), and Novell, Inc. ("Novell") (collectively "Defendants") respectfully move this Court to transfer each of the above-captioned actions (collectively, the "Bascom Cases") to the United States District Court for the Northern District of California.[1]

## I.      SUMMARY OF ARGUMENT

Plaintiff Bascom Research, LLC ("Bascom Research") has filed separate patent infringement lawsuits against each of the Defendants in this District (i.e., the Bascom Cases), largely premised on the same patents.  But the Bascom Cases should not proceed in this District. Rather, in view of all relevant factors, they should proceed, if at all, in the Northern District of California.  Defendants Facebook, LinkedIn, Jive, and BroadVision are all headquartered in the Northern District of California, and the vast majority of their potential witnesses and potentially relevant documents are located in that district.   The only other defendant, Novell, is headquartered in Utah, to which Northern California is far more convenient than Virginia.

Even plaintiff Bascom Research, a non-practicing entity, has little connection to this District.  It was formed and registered to do business in the Commonwealth of Virginia less than four months ago, for the stated benefit of litigating in "Virginia's . . . investor friendly" courts. Moreover, Bascom Research's parent,  Lexington Technology Group, Inc. ("LTG"), is a Delaware non-practicing entity operating out of Texas and New York that announced, just one day before the filing of this lawsuit, a planned merger with New York-based Document Security Systems, Inc. ("DSS").   Since the filing of the Bascom Cases, both LTG and DSS have

---

[1] This motion is submitted and signed on behalf of Facebook in Civil Action No. 1:12-cv-01111. Each of the remaining defendants have concurrently filed Motions to Adopt this Joint Motion to Transfer Venue in their respective related cases in order to avoid burdening the docket and the Court with duplicative filings.

aggressively advertised the lawsuits, potential revenues therefrom, and the benefit of litigating in Virginia courts to current and potential shareholders.

The alleged acts of infringement bear no particular relation to this District and are not alleged to have been any more prevalent here than in any district in the nation. Additionally, the convenience of witnesses, the cost of obtaining attendance of witnesses and production of documents, and the interests of justice all strongly favor transferring the Bascom Cases. Accordingly, this Court should transfer each of the Bascom Cases to the Northern District of California pursuant to Section 1404(a) because that district is "clearly more convenient" than the Eastern District of Virginia for litigation of these patent infringement suits.

## II.    FACTUAL BACKGROUND

Non-practicing entity Bascom Research filed the Complaints in the several Bascom Cases on October 3, 2012, alleging direct and indirect infringement of U.S. Patent Nos. 7,111,232 ("the '232 patent"), 7,139,974 ("the '974 patent"), 7,158,971 ("the '971 patent"), and 7,389,241 ("the '241 patent") (collectively "patents-at-issue").[2] Bascom alleges that Defendants infringe one or more claims of these patents by "making, using, importing, selling, and/or offering for sale infringing products and services" or by inducing end-users to infringe the patents-at-issue. (*See, e.g.*, Facebook Compl., Case No. 1:12-cv-1111 (D.I. 1) ¶¶ 31-35, 39-43, 47-51, 55-59; LinkedIn Compl., Case No. 1:12-cv-1112 (D.I. 1) ¶¶ 32-36, 40-44, 48-52, 56-60; Novell Compl., Case No. 1:12-cv-1113 (D.I. 1) ¶¶ 25-29, 33-37, 41-45; Jive Compl., Case No. 1:12-cv-1114 (D.I. 1) ¶¶ 25-29, 33-37, 41-45; BroadVision Compl., Case No. 1:12-cv-1115 (D.I. 1) ¶¶ 25-29, 33-37, 41-45.[3])

---

[2] Bascom has asserted the '232, '974, and '971 patents against all Defendants. Bascom also asserted the '241 patent against Facebook and LinkedIn.
[3] Motions to dismiss the Complaints against Facebook, LinkedIn, Novell, Jive, and BroadVision

### A.      Defendants Have No Relevant Connection to this District

Facebook is a Delaware corporation headquartered in Menlo Park, California, which is located in the Northern District of California.  (Declaration of Jeremy Jordan ¶ 2 (hereinafter, "Facebook Decl.").)  Insofar as the Facebook Complaint identifies accused Facebook systems or services, the vast majority, if not all, of Facebook employees with knowledge of the development, implementation, and operation of such systems or services are located at Facebook's Menlo Park headquarters.  (*Id.* ¶ 4.)  While Facebook maintains several data centers throughout the United States, including one located in Northern Virginia, the vast majority of likely sources of proof, if not all, including documentation for all of Facebook's service offerings, are located at or accessed and managed from Facebook's headquarters.  (*Id.* ¶¶ 3, 5.) Other than the small number of employees working at this data center, Facebook has no other offices, facilities, or technical employees working in the Eastern District of Virginia.  (*Id.* ¶ 5.)

LinkedIn is a Delaware corporation headquartered in Mountain View, California, which is located in the Northern District of California.  (Declaration of Avery Moon ¶ 2 (hereinafter, "LinkedIn Decl.").)  Insofar as the LinkedIn Complaint identifies LinkedIn accused systems or services, the vast majority of LinkedIn employees with knowledge of the development, implementation, and operation of such systems or services are all located at LinkedIn's Mountain View headquarters.  (LinkedIn Decl. ¶ 3, 4.)  Likewise, the overwhelming majority of likely sources of proof, including documentation for the accused services, are located at LinkedIn's headquarters.  (*Id.* ¶ 3-5.)  LinkedIn does not maintain an office in Virginia or have any employees in Virginia.  (*Id.* ¶ 6-7.)

---

were filed concurrent to this Motion, as those Complaints fail to properly set out a claim for relief under Federal Rules of Civil Procedure 12(b)(6).

Jive is a Delaware corporation headquartered in Palo Alto, California, which is located in the Northern District of California.  (Declaration of William Pierznik, ¶ 2 (hereinafter, "Jive Decl.").)  Insofar as the Jive Complaint identifies Jive accused systems or services, the Jive employees with knowledge of the development, implementation, and operation of such systems or services are primarily located in Jive's Palo Alto headquarters.  (Jive Decl. ¶¶ 3, 5, 6-7.)  Likewise, the likely sources of proof, including documentation for the accused systems and services, are located at Jive's Palo Alto headquarters.  (*Id.* ¶ 4.)  While Jive has a small number of employees in Virginia, Jive does not maintain an office there, nor is Jive aware of any relevant documents located in the Eastern District of Virginia.  (*Id.* ¶ 8.)

BroadVision is a Delaware corporation headquartered in Redwood City, California, which is located in the Northern District of California.  (Declaration of Shin-Yuan Tzou ¶ 2 (hereinafter, "BroadVision Decl.").)   Insofar as the BroadVision Complaint identifies BroadVision accused systems or services, the BroadVision employees with knowledge of the development, implementation, and operation of such systems or services are primarily located in BroadVision's Redwood City headquarters.  (BroadVision Decl. ¶¶ 3, 5.)  Likewise, the likely sources of proof, including documentation for the accused systems and services, are located at BroadVision's Redwood City headquarters.  (*Id.* ¶ 6.)  BroadVision does not maintain an office or have any employees in Virginia.  (*Id.* ¶ 4.)  Moreover, BroadVision has made no sales of the accused ClearVale product in Virginia.  (*Id.*)

Novell is headquartered in Provo, Utah.  (Declaration of Jim Lundberg ¶ 2 (hereinafter, "Novell Decl.").)  Insofar as the Novell Complaint identifies Novell accused systems or services, the entire product management team for the accused instrumentality is in Utah.  (*Id.* ¶ 6.)  The engineers are primarily (soon, exclusively) based in Utah, and none are in Virginia.  (*Id.* ¶ 7.)

The infrastructure for the accused instrumentality in primarily located in, and exclusively operated from, Utah.  (*Id.* ¶ 8.)  The helpdesk support for the accused instrumentality is in Utah and Malaysia.  (*Id.* ¶ 9.)  And *all* of Novell's accounting and revenue reporting for domestic transactions are in Utah.  (*Id.* ¶ 4.)  Thus, the Novell employees most knowledgeable regarding the development, implementation, and operation of such systems or services are primarily located at Novell's Utah headquarters, as are all the likely sources of proof as to both liability *and* damages.

### B.     The Plaintiff Lacks a Significant Connection to this District

Bascom Research is a non-practicing entity and recently created limited liability company with a principal place of business at the residential address of its only apparent employee, Tom Bascom.  (Declaration of Brian Wikner (hereinafter, "Wikner Decl.") Exs. 2, 3, 14 at 11.)  Bascom Research filed its business registration with the Commonwealth of Virginia on June 6, 2012—merely four months before the Bascom Cases were filed.  (*Id.* Ex. 2.)

Critically though, Bascom Research is a wholly-owned subsidiary of Lexington Technology Group, Inc. ("LTG"), which is a Delaware corporation with no known connection to Virginia.  (Wikner Decl. Exs. 4-6.)  LTG's principal places of business appear to be in Texas and New York.  (Wikner Decl. Exs. 6, 7, 19-20.)  LTG was incorporated in Delaware on May 10, 2012—less than one month before Bascom Research was formed in Virginia.  (Wikner Decl. Exs. 2, 4.)  LTG boasts that it seeks to "generat[e] returns from patent monetization."  (Wikner Decl. Ex. 5.)  The patents-at-issue, now owned by Bascom Research, were purportedly invented by Tom Bascom, who is now listed as among the management team of LTG.[4]  (Wikner Decl.

---

[4] Tom Bascom is the named inventor on all four patents-at-issue.  One patent—the '974 patent—lists two additional co-inventors, Tanya Jones and Jason N. Harmon, but the face of the patent identifies Bascom as the sole original assignee.  From the information available, it appears that

Exs. 6, 7.)  According to the USPTO assignment records, Mr. Bascom assigned his patents to the newly formed Bascom Research entity on July 9, 2012, less than three months before the Bascom Cases were filed.  (*Id.* Exs. 8-11.)

Notably, LTG and its wholly-owned Bascom Research "division" announced on October 2, 2012—the day before the Bascom Cases were filed—that they were being acquired by Document Security Systems, Inc. ("DSS"), a New York corporation with a principal place of business in Rochester, New York, and an office located in Brisbane, California, which is in the Northern District of California.  (Wikner Decl. Exs. 12-14, 30.)  In a press release posted to its website on October 3, 2012, DSS announced the filing of the Bascom Cases against the Defendants.  (*Id.* Ex. 18.)  LTG's and DSS's web and social media sites both subsequently linked to press commentary speculating that the "Facebook Lawsuit Could Send Document Security Systems' Share Price Soaring" and reasoning that a positive Markman outcome from "Virginia's . . . investor friendly" courts "could easily boost DSS/LTG share price 50%."  (Wikner Decl. Ex. 16; *see also id.* Exs. 15, 17.)

### C.     All Known Potential Non-Party Witnesses Reside Outside of Virginia

All known potential non-party witnesses reside outside of Virginia.  The non-party financiers and advisors of Bascom Research—LTG and DSS—are citizens of Delaware and New York, respectively.  (Wikner Decl. Exs. 4, 13-14.)  LTG and DSS's management executives, including Will Rosellini, Peter Hardigan, Patrick White, Robert Fagenson, and Ira Greenstein, all appear to reside in New York, California, or Texas.  (*Id.* Exs. 19-21, 24-25.)  Key investors and advisors of LTG, including Warren Hurwitz and Jeff Ronaldi, are located in New York.  (*Id.* Exs. 22-23.)  IPNav, a consulting firm used by LTG in analyzing and valuing the patents-at-

---

Ms. Jones is deceased.  (Wikner Decl. Ex. 28.)

issue, is based in Dallas, Texas.  (*Id.* Ex. 26.)  One co-inventor of the '974 patent resides in Maryland, and the other appears to be deceased.  (*Id.* Exs. 27-28.)  Moreover, there are 68 Northern District of California-based non-party witnesses who are inventors of prior art references cited on the face of the patents-at-issue.  (*See* Wikner Decl. Exs. 31-53.)

Indeed, the *only* potentially relevant connection between this litigation and Virginia is a single individual: Tom Bascom, the named inventor of the patents-at-issue.  (*Id.* Exs. 3, 6.)  Mr. Bascom, however, as CTO of Bascom Research, is an employee of the plaintiff and thus a party witness. (*Id.* Ex. 7.)

## III.   ARGUMENT

### A.   Legal Standard

A district court may transfer a civil action to any other district where the action might originally have been brought if doing so would serve the convenience of the parties and witnesses and the interests of justice.  28 U.S.C. § 1404(a).  A court must perform a two-step analysis to determine if a transfer is appropriate under § 1404(a):  first, the court must determine whether the action could originally have been brought in the proposed transferee forum; and second, the court must determine whether transferring the case would serve the convenience of the parties and witnesses and the interests of justice.  *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 994 (E.D. Va. 2011); *Jaffé v. LSI Corp.*, -- F. Supp. 2d ----, Civ. A. No. 3:12-cv-25, 2012 WL 2248044, at *2 (E.D. Va. June 15, 2012).

To determine whether transferring a case would serve the goals of convenience and justice, this Court considers four factors:  "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) interest of justice."  *Pragmatus*, 769 F. Supp. 2d at 995 (quoting *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)).

**B.** **This Action Could Originally Have Been Brought in the Northern District of California**

Bascom Research could have asserted the claims in its various complaints against the Defendants in the Northern District of California because "all defendants are residents of the State in which [that] district is located." *See* 28 U.S.C. § 1391(b)(1). Defendants Facebook, LinkedIn, BroadVision, and Jive are each headquartered in the Northern District of California, which qualifies them as "residents" of the Northern District of California. And although Novell is headquartered in Utah, for venue purposes in this particular dispute, Novell also "resides" in the Northern District of California because, for the reasons alleged by Bascom in its Novell Complaint, (*see, e.g.,* Novell Compl., ¶¶ 4, 19–23, 27–29, 35–37, 43–45), Novell is amenable to specific personal jurisdiction there. *See* 28 U.S.C. § 1391(c)(2). Therefore, the Northern District of California is a venue in which the Bascom Cases could originally have been brought against all of the Defendants.

**C.** **The Convenience Factors and Interests of Justice Overwhelmingly Favor Transfer**

Once the Court has determined that the Bascom Cases could have been brought in the Northern District of California, it must consider whether transfer would serve the convenience of the parties and non-party witnesses and the interests of justice. *Pragmatus*, 769 F. Supp. 2d at 994.

**1.** **Plaintiff's Choice of Forum Should Be Given Little Weight**

Although a plaintiff's choice of forum is generally a significant consideration in the transfer analysis, it is by no means dispositive. *Pragmatus*, 769 F. Supp. 2d at 995 (citing *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-57 (E.D. Va. 1988)). "For this factor to strongly weigh against transfer, a plaintiff must prove a legitimate connection to the district." *Id.*; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)

(granting mandamus and transferring where plaintiff incorporated in Texas shortly before filing suit in the Eastern District of Texas).

Bascom Research has no meaningful connection to the Eastern District of Virginia.  It was formed as a wholly-owned "division" of Texas and New York-based LTG in June 2012, and incorporated in Virginia just months before it was assigned the patents-at-issue and filed the Bascom Cases.  (Wikner Decl. Exs. 2, 6.)  LTG is currently a non-practicing entity that touts its focus on "patent monetization" through licensing and litigation, and prides itself its IP litigation-savvy management team, with members based in Texas and New York.[5]  (Wikner Decl. Exs. 5, 7, 14 at 7, 19, 20.)

Moreover, just one day before the filing of the Bascom Cases, LTG publicly announced that it would be merging with New York-based DSS.  (*Id.* Ex. 12.)  In the hours and days following the filing of the lawsuits, both LTG and DSS engaged in an aggressive public relations campaign to generate investor interest in LTG/DSS.  (*Id.* Exs. 6, 15-18.)  Both companies' official web and social media sites promptly and approvingly linked to industry articles exclaiming how the lawsuit could cause both companies' stock prices to "soar" and hailing the advantages LTG and its New York-based financiers would receive by litigating on an expedited basis in "Virginia's . . . investor friendly" courts.  (Wikner Decl. Exs. 15-17.)

The Bascom Cases each present virtually the same set of facts this Court addressed last year in *Pragmatus AV, LLC v. Facebook, Inc.*, where this Court granted a motion to transfer to the Northern District of California.  Like Pragmatus, Bascom Research is a non-practicing entity whose business is to "monetize" its patent portfolio through threatened and actual litigation.

---

[5] In addition to New York, LTG Chief Operating Officer Peter Hardigan appears to also have a current residence in Redwood City, California, which is located in the Northern District of California.  (Wikner Decl. Ex. 20.)

(Wikner Decl. Exs. 5, 6, 14 at 11.)   Bascom Research appears to have no manufacturing facilities, operations, or real offices in Virginia, and no employees in the State except for Bascom Research/LTG Chief Technical Officer, Tom Bascom.  (*See* Wikner Decl. Exs. 2, 6.)  Bascom Research's claimed principal place of business—7025 Elizabeth Drive, McLean, Virginia—is, in fact, merely the residential address of Mr. Bascom.  (Wikner Decl. Exs. 2, 3.)  As DSS acknowledged in a recent SEC filing, though Bascom Research is the captioned plaintiff in the Bascom Cases, LTG is effectively controlling it.  (Wikner Decl. Ex.13 at 11 ("On October 3, 2012, DSS issued a joint press release with Lexington regarding ***Lexington's*** filing of its patent infringement lawsuits in the United States District Court, Eastern District of Virginia.") (emphasis added).)  LTG's recent decision to form "Bascom Research LLC" was an obvious attempt to manufacture a basis to bring suit in this District.  This Court has expressly rejected attempts to manipulate venue under very similar facts.  *See Pragmatus*, 769 F. Supp. 2d at 995; *Pragmatus AV, LLC v. Facebook, Inc.*, Civ. Case No. 2:10-cv-560 (D.I. 25) (hereinafter "*Pragmatus II*") (E.D. Va., Norfolk Div., Apr. 29, 2011) (granting Facebook's motion to transfer a subsequent Pragmatus lawsuit to the Northern District of California; relying on the reasoning of Judge Brinkema in *Pragmatus I*) (attached hereto as Ex. 29 to the Wikner Decl.); *Civix-DDI, LLC v. Loopnet, Inc.*, No. 2:12cv2, 2012 WL 3776688, at *3-4 (E.D. Va. Aug. 30, 2012) (finding similar connections to Virginia "weak" and not entitled to great weight).

Like Pragmatus, Bascom Research's *only* connection with the Eastern District of Virginia is that it was formed in the Commonwealth just months before being assigned the patents-at-issue and filing the instant lawsuits.  (Wikner Decl. Exs. 2, 8-11.)  Both this Court and the Federal Circuit have rejected patent owners' arguments that their choice of forum is entitled to deference when their connections to the forum are manufactured for the litigation.  *See In re*

*Microsoft Corp.*, 630 F.3d at 1363-64; *Pragmatus*, 769 F. Supp. 2d at 995 (citing *In re Microsoft*, 630 F.3d at 1364).   Similarly, Bascom Research's financiers and stakeholders have no connection to Virginia, but nonetheless chose to establish "Bascom Research LLC" in Virginia for the purpose of waging patent enforcement campaigns in an expedited docket while consummating the merger of the two companies.  (*See* Wikner Decl. Ex. 14.)  Neither DSS nor LTG has been shy to advertise that pursuing this litigation against Defendants in the "rocket docket" stands as a potential boon to their shareholders.  (*Id.* Exs. 14-17.)

Finally, while inventor Tom Bascom may reside in Virginia and be employed by Bascom Research and/or LTG, this Court found a similar connection in *Pragmatus* insufficient to entitle the plaintiff's forum to any significant weight.  *Pragmatus*, 769 F. Supp. 2d at 995 (giving little weight to the fact that Pragmatus's only employee/co-owner resided in the Eastern District of Virginia); *see also Civix-DDI, Inc.*, 2012 WL 3776688, at *3-4 (same); *Adiscov, LLC v. Autonomy Corp., PLC*, Civ. No. 2:11cv201-RBS, Order, D.I. 68[6] at 9 (E.D. Va. June 9, 2011) (even where "the inventor of the [patent in suit] and the patent's prosecuting attorney" reside in this District, "the principle remains the same: the overwhelming majority of the sources of proof in this case, both documentary and testimonial, are in the Northern District of California") (citing *Hunter Eng'g Co. v. ACCU Indus., Inc.*, 245 F. Supp. 2d 761, 775 (E.D. Va. 2002)).   The patents-at-issue are not owned by Mr. Bascom, but by Bascom Research—a wholly-owned subsidiary of LTG.  Accordingly, Bascom Research's choice of forum should be entitled to little weight in the transfer analysis.   *See Pragmatus*, 769 F. Supp. 2d at 995; *accord Pragmatus II*, Civ. Case No. 2:10-cv-560; *Adiscov*, Civ. No. 2:11cv201-RBS, Order, D.I. 68 at 7 (ruling that

---

[6]  For the convenience of the Court, a copy of the Order from *Adiscov, LLC v. Autonomy Corp., PLC*, is attached hereto as Ex. 57 to the Wikner Decl.

"the plaintiff's choice of forum does not warrant a strong presumption and instead counsels that transfer may well be proper," where the plaintiff was a non-practicing entity whose two members both resided in Virginia, one of whom was the patent inventor.)

### 2. The Convenience of the Parties and Access to Sources of Proof Strongly Favor Transfer

In analyzing the convenience of the parties and witnesses, this Court "considers factors such as the 'ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process.'" *Lycos, Inc. v. Tivo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007) (citing *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005)). Here, these factors demonstrate that the Northern District of California is clearly the more convenient venue in which to litigate the parties' dispute.

Because defendants Facebook, LinkedIn, BroadVision and Jive are all headquartered in the Northern District of California, the vast majority of their employees with knowledge of the development, implementation, and operation of the systems and services accused of infringement are located in that District. (Facebook Decl. ¶ 4; LinkedIn Decl. ¶¶ 3, 4; BroadVision Decl. ¶¶ 3, 5; Jive Decl. ¶¶ 3, 5, 7.) Moreover, the vast majority of likely sources of proof, including documentation for those systems and services, are also located, accessed or managed in the Northern District of California. (Facebook Decl. ¶ 3; LinkedIn Decl. ¶¶ 3-5; BroadVision Decl. ¶ 6; Jive Decl. ¶ 4); *see also In re T.S. Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008) (finding that the convenience of access to sources of proof is not diminished by the electronic nature of such evidence). As to defendant Novell, although its likely knowledgeable employees and its likely sources of proof are located primarily in Provo, Utah, Northern California is

obviously a closer and more convenient forum than Virginia in which to litigate.[7]   (*See* Novell Decl. ¶¶ 6-9.)

The location of potentially relevant documentation is particularly important here because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."   *Jaffé*, -- F. Supp. 2d ----, 2012 WL 2248044, at * 4 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).   Therefore, the Northern District of California would be a far more convenient forum for the parties to obtain the vast majority of witness testimony and documentary evidence essential to  this case.

Moreover, because Bascom Research has no genuine tie to Virginia, litigating in Northern California—where a legitimate nexus to the infringement allegations actually exists— would be no more inconvenient to Bascom Research than Virginia.   Bascom Research was formed under the laws of Virginia only one month before it was assigned the patents-at-issue, apparently for the sole purpose of bringing this suit.   LTG/Bascom Research's only connection to Virginia is Tom Bascom, who is identified as among the management of LTG, and whose residential address is Bascom Research's principal place of business.   (Wikner Decl. Exs. 2, 3, 7.)   There can be little doubt that LTG and Bascom Research's decision to locate its "office" at Mr. Bascom's residence in McLean, Virginia, was made in anticipation of this litigation to manufacture venue.   Moreover, LTG and its principals are located in California, Texas, and New York (*id.* Exs. 19-20), LTG's advisors and financiers are located in New York (*id.* Exs. 22-23), and DSS and its principals are located in New York (*id.* Exs. 21, 24-25).   Thus, in reality,

---

[7] By way of illustration of the convenience, Novell's Provo campus is under an hour south of Salt Lake International Airport, from which there are at least 11 (on some days 12) direct flights daily to San Francisco, San Jose, and Oakland—each less than 2 hours long.  (*See* Wikner Decl. Exs. 54-55.)

virtually all of the individuals and entities that manage and control Bascom Research—and who may be identified as party witnesses in this litigation—are located *outside* of Virginia.

By contrast, as explained above, the Defendants have significant and genuine connections to the Northern District of California, and the vast majority of potential witnesses and relevant documents are located in Defendants' offices in that district.   Therefore, the factors of convenience of the parties and witnesses and access to sources of proof overwhelmingly favor the transfer of this case to the Northern District of California.  *See Pragmatus*, 769 F. Supp. 2d at 995-96 (finding defendant Facebook and LinkedIn's connections to Northern California strongly favored transfer on this factor); *see also Pragmatus II*, Civ. Case No. 2:10-cv-560 (same); *In re Genentech*, 566 F.3d at 1345 (finding that transfer was favored where a substantial number, though not all, of the material witnesses resided in the transferee district); *Adiscov,* Civ. No. 2:11cv201-RBS, Order, D.I. 68 at 9-10 (quoting *Hunter Eng'g*, 245 F. Supp. 2d at 775 ("Because patent infringement actions typically involve the testimony of those associated with the development and production of the allegedly infringing product, the preferred forum [in patent infringement actions] is . . .  the hub of activity centered around [the infringing product's] production." (alterations in original; internal quotation marks omitted))).

### 3.    The Availability of Compulsory Process and the Convenience of Non-Party Witnesses Also Favor Transfer

Defendants are aware of no third-party witnesses or documents located within the Eastern District of Virginia.  Because Mr. Bascom is employed by LTG/Bascom Research, he is not a non-party witness.   By all accounts, all third-party witnesses—predominantly affiliates of Bascom Research—are located outside of Virginia, making this factor neutral in the analysis. For example, consultants at IPNav hired by LTG to analyze the value of the Bascom patents before their acquisition appear located predominantly in Texas.  (Wikner Decl. Ex. 26.)  LTG

advisors Warren Hurwitz and Jeff Ronaldi, to the extent not considered party witnesses, are likely to possess information about LTG's business operations and licensing strategy, including that of its Bascom Research division.  Both Mr. Hurwitz and Mr. Ronaldi appear to reside in New York, as do the principals of DSS.  (*See* Wikner Decl. Exs. 21-25.)  Finally, Jason Harmon, named as a co-inventor on one of the four patents-at-issue, resides in Maryland.  (*See* Wikner Decl. Ex. 27.)

Moreover, there are 68 Northern District of California based non-party witnesses who are inventors or authors of prior art references cited on the face of the patents-at-issue.  (*See* Wikner Decl. Exs. 31-53.)  Those witnesses are beyond the subpoena power of this Court.  Thus, litigating this case in the Northern District of California would allow the parties who may wish to use these witnesses' live testimony at trial to do so, as well as increase the convenience to such witnesses themselves.

Because these non-party witnesses are all located outside of Virginia, and many are located in the Northern District of California, there is little advantage or convenience gained to non-parties by litigating in this venue and much to be gained by transferring to the Northern District of California.

> ### 4.    The Cost of Obtaining the Attendance of Witnesses Would Be Much Higher if This Case Were Not Transferred

As explained above, the vast majority of defendants Facebook's, LinkedIn's, BroadVision's, and Jive's potential witnesses reside and work in the Northern District of California.  Furthermore, each of those Defendants' trial counsel is also located in California.  Additionally,  two of Bascom Research's three lead counsel captioned on its complaints are located in Menlo Park, within the Northern District of California.  Thus, if Bascom Cases went to trial in the Northern District of California, defendants Facebook, LinkedIn, BroadVision, and

Jive would incur little costs for overnight travel for either its employees or counsel.  And the costs to defendant Novell would undisputedly be considerably lower if the litigation were to proceed in Northern California, given the geographic proximity to Novell's Utah headquarters and the fact that Novell's lead trial counsel is located in California.[8]  However, if Defendants are required to litigate this dispute here, each would incur significant airfare, lodging, and meal expenses for its employees and counsel traveling from the West Coast and Utah, as would Bascom Research's Menlo Park-based counsel.

Bascom Research likely will have few potential party witnesses in this case.  It does not appear that Bascom Research has any employees other than Mr. Bascom.  As discussed above, all other individuals and entities controlling Bascom Research appear to be located in Texas or New York, not Virginia.

Thus, on balance, the cost of obtaining attendance of witnesses strongly favors transfer to the Northern District of California.  *See T.S. Tech*, 551 F.3d at 1320 (recognizing the significant expense and inconvenience of long-distance travel for material witnesses).

### 5.    The Interests of Justice Would be Served by Transferring This Action

This Court has explained that "[r]elevant considerations in evaluating the 'interests of justice' are the pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment.'"  *Pragmatus*, 769 F. Supp. 2d at 996 (internal quotations and citation omitted).

This factor strongly favors transfer to the Northern District of California.  Facebook, LinkedIn, BroadVision, and Jive are all headquartered in the Northern District of California.

---

[8] Because Novell's lead counsel is a California lawyer, transfer also would spare *all* the Defendants the cost and complication of separate local counsel.

Each of those Defendants has been doing business there for several years:  Facebook (more than 7 years); LinkedIn (more than 9 years); BroadVision (approximately 15 years); Jive (more than 2 years).  (Facebook Decl. ¶ 2; LinkedIn Decl. ¶ 2; BroadVision Decl. ¶ 3; Wikner Decl. Ex. 56.)  By contrast, Bascom Research has little connection with this forum, having registered to do business in the Commonwealth and acquiring its patents just months before filing suit.  (Wikner Decl. Exs. 2, 8-11.)  Therefore, Bascom Research's patent infringement suit against Defendants is a controversy centered in the Northern District of California, and should be litigated there.

As to the courts' familiarity with applicable law, this factor is neutral.  Patent law is a federal issue and is properly before any of the federal district courts.  In addition, this District and the Northern District of California are both experienced patent litigation fora.

While the relative pace of the docket in this District is faster than in Northern California, this Court has repeatedly emphasized that the interests of justice are not served by retaining cases that should be litigated elsewhere.  "When a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'"  *Pragmatus*, 769 F. Supp. 2d at 997 (citing *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 572 (E.D. Va. 2005)); *see also Civix-DDI, LLC*, 2012 WL 3776688, at *7.  "Left unchecked, allowing lawsuits with such a minimal connection to the district to go forward here would result in docket overloads, unfairly slowing the cases for parties with genuine connections to this district."  *Pragmatus*, 769 F. Supp. 2d at 997.

The tenuous nature of Bascom Research's connection with this District is similar to that of the plaintiff in *Pragmatus*.  As discussed above, Bascom Research was formed in Virginia just five months ago and acquired the patents-at-issue just one month later.  (Wikner Decl. Exs. 2, 8-

11.)  Bascom Research, though purporting to have ties to Virginia, is by all accounts controlled and operated by LTG, a non-practicing Delaware entity operated out of Texas and New York. And following the anticipated completion of the pending merger, Bascom Research/LTG will become part of DSS, yet another New York-based entity.  As discussed in detail above, it is apparent that Bascom Research was established in Virginia for the sole purpose of filing lawsuits and taking advantage of this Court's expedited docket.  (*See* Wikner Decl. Exs. 14-17.)

In short, the convenience factors and interests of justice overwhelmingly favor transfer to the Northern District of California.  Therefore, the Court should transfer this case to the Northern District of California pursuant to Section 1404(a).

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that each of the Bascom Cases be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: November 8, 2012                              Respectfully submitted,

                                                     /s/  Scott A. Cole

                                                     Stephen R. Smith (VSB 81628)
                                                     Scott A. Cole (Va. Bar No. 74771)
                                                     scole@cooley.com
                                                     COOLEY LLP
                                                     One Freedom Square
                                                     11951 Freedom Drive
                                                     Reston, VA 20190-5656
                                                     Telephone:  (703) 456-8000
                                                     Facsimile:   (703) 456-8100

                                                     Heidi Keefe (Admitted *pro hac vice* )
                                                     Mark Weinstein (Admitted *pro hac vice*)
                                                     COOLEY LLP
                                                     Five Palo Alto Square
                                                     3000 El Camino Real
                                                     Palo Alto, CA 94306-2155
                                                     Telephone:  (650) 843-5000
                                                     Facsimile:   (650) 857-0663

18.

Attorneys for Defendant
FACEBOOK, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 8, 2012.  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/  Scott A. Cole*
Scott A. Cole (Va. Bar No. 74771)
